MARY JANE FIESTER, RESPONDENT, v. JOHN SHEPARD, EXECUTOR, ETC., OF ANNA HAVENS, DECEASED, APPELLANT.

*Will — construction of a residuary devise — Order of a surrogate compelling an executor to account — when it involves a substantial right.*

A testatrix by her will devised all her property to a trustee, to apply the same and the rents thereof to the support of her father during his life, and after his death to make out of the remainder thereof certain specified payments. It then provided as follows: "The residue of my estate, if any there shall be to be paid by my executor hereinfter named, to the person who shall last take care of my father before his death."

*Held*, that she did not intend to give the residue of her estate to the individual who should happen to be the last one to care with his own hands for her dying father, or to give it to the servant or agent who should attend him and care for him during his last sickness under employment and compensation from the trustee.

Where the right of one, claiming to be a residuary legatee, to call the executor to account, is contested by the latter on the ground that the petitioner has no interest in the estate, the order of the surrogate granting the application and compelling the executor to account involves a substantial right, and is appealable.

APPEAL from an order of the surrogate of the county of Livingston, requiring the appellant to account as executor of the will of Ann Havens, deceased, on the application of the respondent.

*S. Hubbard*, for the appellant.

*J. A. Van Derlip*, for the respondent.

SMITH, P. J.:

Ann Havens died in 1873, leaving a will by which she gave all her property to John Shepard, the appellant, in trust, to apply the same and the rents and profits thereof to the support of her father, Darling Havens, during his life, and after his death out of the remainder to pay her father's funeral expenses, to erect a monument at his grave, to invest the sum of $200 at interest to provide for keeping the graves of her father, her mother and herself in good order, and to dispose of certain specific articles as therein directed.

The will then provided as follows: " The residue of my estate, if any there shall be, to be paid by my executor hereinafter named to the person who shall last take care of my father before his death." Lastly, the said John Shepard was named as sole executor. Darling Havens survived his daughter and died on the 24th of January, 1879. The respondent claims to be the person who " last took care of him before his death," and on that ground to be entitled to the residuum of the estate given by the provision above quoted (which is designated in the will as the eighth subdivision of the second clause). And it is understood that the surrogate has sustained her claim in that respect, and upon that ground has ordered the executor to account upon her application.

The facts of the case to a considerable extent are undisputed. It appears that the property left by Ann Havens consisted in part of a house and lot in Scottsburgh, in the county of Livingston, that had formerly been owned and occupied by Darling Havens. It had been used as a tavern for several years, and was so used at the time of the death of the testatrix. After her death Shepard, as trustee under the will, leased the premises to different persons from time to time, and arranged with the tenants to furnish Havens with room and board.

In April, 1878, Shepard leased the premises to Mrs. Fiester, the respondent, for $200 a year, reserving a bedroom for the use of Havens, and Mrs. Fiester agreed to board Havens and wash and mend for him for three dollars a week to apply on the rent. Under that arrangement Havens boarded with her till he died. In December, 1879, Havens was taken sick and Shepard then arranged with Mrs. Fiester to give Havens the use of a more convenient room

and to take care of him in his sickness, for which she was to have additional compensation. She testified that the amount of such compensation was not agreed on at the time, while he says it was fixed at two dollars a week in addition to what she was then receiving, but the discrepancy is not material since it appears that Shepard subsequently paid her a sum for her care of Havens in his sickness, with which she expressed herself satisfied. Under the arrangements above stated Havens continued at Mrs. Fiester's house and was cared for there till he died. Much testimony was given before the surrogate for the purpose of showing what services Mrs. Fiester rendered in person, in and about taking care of Havens, which we do not think very material in the view we take of the meaning of the testatrix as expressed in her will. There is no question but that Mrs. Fiester faithfully performed her contract with Shepard, and that through her agency the sick man was well nursed and cared for. Thereby she earned the compensation which Shepard agreed to pay her and which she has received. But did she thereby become entitled also to the residue of the estate of Ann Havens? In other words, did the testatrix intend that in case the trustee should sufficiently provide for the needs of her father in his last sickness by employing competent physicians, nurses and attendants, the persons so employed and paid by him, or any one of them, in addition to being thus compensated, should take the residue of her estate? We have attentively considered the opinion of the learned surrogate and the arguments of counsel, but we are unable to sustain the claim of the respondent.

The respondent's claim rests upon the ground that she personally nursed and cared for Havens in his last sickness. This fact she insists entitles her to the residue under the eighth clause, although she was employed by the trustee and was paid by him for her services. As was pertinently said in the brief of the appellant's counsel, if the claim of the respondent is good, her servant, who also took care of the deceased by her direction, could claim on the like ground. The intent of the testatrix was not to give the residue of her estate to the individual who should happen to be the last one with his own hands to care for her dying father, or to give it to the servant or agent who should attend him and care for him during his last sickness, under employment and compensation from the

trustee.   Such a disposition · of her estate would have been whim-sical and is not to be imputed to her, unless the language of the will requires it.   We think it does not.

If the respondent had found Havens uncared for in his last sick-ness, and in that case had rendered her services of her own motion, a different case would have been presented.

The questions discussed on the argument, whether the clause in question is void for uncertainty, and whether the appellant, as executor or trustee, is entitled to the residue of the estate, need not be considered in this appeal.   For the reasons above stated we think the respondent is not entitled to the residue, and that conclusion determines the whole case.

The respondent's counsel makes the point that the order of the surrogate is not appealable, as it does not involve a substantial right. We think otherwise.   The question involved is whether the respond-ent has any interest in the estate which entitled her to call on the executor to account.   It is no answer to say that the surrogate may of his own motion require an accounting.   He has not done so, but the proceeding out of which this appeal has arisen was set in motion by the respondent.

The order appealed from should be reversed and the proceedings remitted to the surrogate of the county of Livingston, with direc-tions to enter an order dismissing the proceedings, the appellant to have costs of this appeal out of the estate.

Present — SMITH, P. J.. HARDIN and DWIGHT, JJ.

So ordered.